# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL POWELL, | : | No. 1:13-cv-00070 |
| Plaintiff, | : | Hon. John E. Jones III |
| v. | : | |
| RALPH WEISS, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

### May 6, 2013

## I.  INTRODUCTION

Presently pending before the court in the above-captioned action are the motions to dismiss filed by Defendants Ralph Weiss, John E. Wetzel, and Diane Yale (doc. 7) and Defendant Michael C. Potteiger (doc. 9). The motions have been fully briefed (docs. 10, 12, 16, 17, 21) and are thus ripe for disposition. For the reasons that follow, we will grant both motions in their respective entireties and dismiss this action with prejudice.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that

"raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8

"does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### III. BACKGROUND

In accordance with the standard of review applicable to the instant motions, the following facts are derived from the Plaintiff's Complaint (doc. 1) and viewed in a light most favorable to the Plaintiff.

Plaintiff Darryl Powell ("Plaintiff" or "Powell") was formerly an inmate at the Pennsylvania State Correctional Institution at Dallas ("SCI Dallas"). (Doc. 1, ¶ 8). Defendant Michael C. Potteiger ("Potteiger") is Chairman of the Pennsylvania Board of Probation and Parole and Defendants Ralph Weiss, John Wetzel, and Diane Yale (collectively, "Corrections Defendants") are officials or employees of the Pennsylvania Department of Corrections. (*Id.* ¶¶ 3-5). In the instant dispute, Powell asserts that the Defendants are constitutionally liable to him under Section 1983 for the alleged miscalculation of his prison sentence and prerelease status.

The factual background underlying this dispute was best summarized by the Commonwealth Court of Pennsylvania, which addressed Powell's first challenge to the miscalculation of his sentence:

> Powell, formerly incarcerated at the State Correctional
> Institution at Dallas (SCI-Dallas), was paroled from the

Department's custody on August 31, 2009. On July 1, 2002, Powell was sentenced in three separate criminal actions in the Court of Common Pleas of Philadelphia County: CP 0112-0367 (CP-367), CP 0203-0136 (CP-136), and CP 0009-0723 (CP-723). In CP-367, Powell was sentenced by the Honorable Lillian Ransom (Judge Ransom) to a term of one and one-half to three years incarceration, with two years of probation to be served consecutively. In CP-136, Powell was sentenced by Judge Ransom to a term of one and one-half to three years incarceration, with two years of probation to be served consecutively. Judge Ransom directed that CP-136 be served concurrent with CP-367. In CP-723, Powell was sentenced by the Honorable Genece Brinkley (Judge Brinkley) to a term of five to ten years incarceration. Judge Brinkley directed that CP-723 be served consecutively to CP-367 and CP-136.

Powell appealed Judge Ransom's sentences in CP-367 and CP-136 to the Superior Court. By order filed April 6, 2004, the Superior Court affirmed in part, vacated in part, and remanded the matter to Judge Ransom for resentencing. On June 16, 2004, Judge Ransom resentenced Powell in CP-367 to a term of one and one-half to three years incarceration, to be served concurrently with "any other sentence." In CP-136, Judge Ransom resentenced Powell to a term of one and one-half to three years incarceration, to be served concurrently with CP-367. Based on Judge Ransom's June 16, 2004 resentencing orders, the Department recalculated Powell's overall prison term; figuring Judge Ransom's concurrent sentences in CP-367 and CP-136 as consecutive to Judge Brinkley's sentence in CP-723.

On February 13, 2006, Powell filed a petition for review in this Court seeking a writ of mandamus compelling the Department to recalculate his overall prison term so that Judge Brinkley's sentence in CP-723 would run concurrent with Judge Ransom's concurrent sentences in CP-367 and CP-136. Interestingly, on May 18, 2006, while Powell's

> action was still pending, the Department, in an exercise of its own volition, recalculated Powell's overall prison term so that all three sentences ran concurrently. Subsequently, on May 22, 2006, the Department filed a motion suggesting that this Court dismiss Powell's petition for mootness on the grounds that Powell's requested relief had been granted. Powell opposed the Department's suggestion of mootness. By order dated June 20, 2006, this Court dismissed Powell's petition.
>
> Relying on the Department's May 18, 2006 recalculation, Powell applied for prerelease to a community corrections center (CCC), which was approved. Pursuant to the Department's standard procedures relating to inmate records, however, Powell's sentence calculation was reviewed as part of his processing for prerelease to the CCC. Performing this review, the Department sought clarification from Judge Ransom regarding her June 16, 2004 resentencing orders. The Department inquired whether Judge Ransom intended all three sentences to run concurrently, informing Judge Ransom that Judge Brinkley's July 1, 2002 sentencing order directed Powell's sentence in CP-723 to run consecutively to Powell's sentences in CP-367 and CP-136. Judge Ransom responded to the Department's inquiry on February 8, 2007, stating: "Please run my sentence consecutive to Judge Brinkley's sentence." Based on Judge Ransom's response, the Department again recalculated Powell's overall prison term, running Powell's sentences in CP-367 and CP-136 consecutively to Powell's sentence in CP-723. As a result, Powell was denied prerelease to the CCC.

*Commonwealth of Pennsylvania ex rel. Powell v. Pennsylvania Department of Corrections*, 14 A.3d 912, 913-14 (Pa. Commw. Ct. 2011). Powell then brought the above-cited action in state court, seeking a writ of mandamus compelling the Department to again recalculate his prison term so that Judge Ransom's

6

sentences in CP-367 and CP-136 would run concurrently with Judge Brinkley's sentence in CP-723. A three-judge panel of the Commonwealth Court ultimately concluded that Judge Ransom's June 16, 2004 sentencing orders were final and could not be modified by her February 8, 2007 clarification letter; the court thus ordered the Department to again recalculate Powell's prison term so that the sentences in CP-367 and CP-136 ran concurrently with the sentence in CP-723. *Id.* at 916-19.

While the Commonwealth Court matter was pending, on August 31, 2009, Powell was paroled from the custody of the Department of Corrections. (Doc. 1, ¶ 23). Once the Commonwealth Court issued its January 12, 2011 decision, the Department recalculated Powell's prison sentence. (*Id.* ¶¶ 22-24). As a result of that final calculation, Powell's maximum sentence date was May 22, 2012. (*Id.* ¶ 24). However, according to Powell, following his release from the Department's custody on August 31, 2009, the Defendants continued to supervise him as a state parolee until December of 2012, resulting in his serving seven (7) months of supervision in excess of his actual sentence. (*Id.* ¶¶ 25-26). Powell asserts that the Defendants' actions were "willful and outrageous in that their motives and conduct . . . were malicious, wanton, reckless, oppressive, and so egregious as to shock the contemporary conscience." (*Id.* ¶ 32).

Powell commenced this action on January 10, 2013 with the filing of a Complaint. The Corrections Defendants responded to the Complaint by filing a Rule 12(b)(6) motion to dismiss on March 12, 2013, and on March 22, 2013, Defendant Potteiger also filed a Rule 12(b)(6) motion. The motions have been fully briefed (docs. 10, 12, 16, 17, 21) and are thus ripe for our review.

IV. DISCUSSION

The gist of the Plaintiff's Complaint is that an incorrect calculation of his sentence resulted in a loss of or delay in prerelease status, a period of wrongful incarceration, and a period of parole supervision which endured beyond his maximum sentence. The Corrections Defendants contend that the Eleventh Amendment bars the Plaintiff's official capacity claims and that the Plaintiff's allegations are insufficient to otherwise establish personal Section 1983 liability against them. Defendant Potteiger asserts that there are no facts attributing the Plaintiff's harm to his conduct or otherwise establishing that he participated in or contributed to the Plaintiff's injury, thus warranting dismissal of the claims against him pursuant to Rule 12(b)(6). We address the motions *seriatim*.[1]

---

[1] We note that the Plaintiff in his opposition papers has conceded that (1) the Eleventh Amendment bars his claims for monetary damages against the Defendants in their official capacities and (2) the Complaint contains insufficient facts to support his Eight Amendment excessive force claim against the various Defendants. (Doc. 17, pp. 2-3). Accordingly, we will grant the motions to the extent they raise these concurred issues.

### A. Defendant Potteiger's Motion

As we have noted, the crux of the Plaintiff's complaint relates to the alleged miscalculation of his prison sentence. Defendant Potteiger asserts that because the Pennsylvania Board of Probation and Parole is not involved in the calculation of sentences, he cannot be liable for whatever miscalculation may have occurred and caused the Plaintiff's harms. On the sparse facts provided in the Complaint, we cannot but agree with Defendant Potteiger.

As Defendant Potteiger notes, it is the Department of Corrections, not the Board of Probation and Parole, that calculates prison and parole sentences. *See Gillespie v. Dept. of Corrections*, 527 A.2d 1061, 1065 (Pa. Commw. 1987) ("The Department [of Corrections], not the Board [of Probation and Parole], is responsible for calculating the minimum and maximum terms of prisoners committed to its jurisdiction."); *see also Nickson v. Pa. Bd. of Probation and Parole*, 880 A.2d 21, 24 (Pa. Commw. 2005) ("This right and responsibility is exclusive to the Department of Corrections."). The Plaintiff offers a very brief response to the Defendant's arguments, broadly contending that despite the exclusive delegation of this responsibility to the Department of Corrections, Defendant Potteiger and the Board of Probation and Parole "must have" been aware of the Commonwealth Court litigation brought by the Plaintiff against the

9

Department of Corrections. Nonetheless, the Plaintiff entirely fails to factually and causally connect the miscalculation of his sentence to Defendant Potteiger, either in his individual capacity or in his official capacity as a municipal liability claim. Regardless of whether Defendant Potteiger was actually aware of the litigation surrounding the miscalculation, the fact remains that nothing in the Complaint attributes the miscalculation itself to him. For this reason, we must grant Defendant Potteiger's motion and dismiss the Plaintiff's claims against him with prejudice.

### B. Corrections Defendants' Motion

We turn next to the Corrections Defendants' motion, which raises several arguments in support of dismissal: first, the Corrections Defendants contend that the Complaint fails to state a claim against Defendants Wetzel and Yale because it does not allege any personal involvement by either individual and, second, they assert that the due process claims must be dismissed because the Plaintiff did not have a protected interest in prerelease status. We address both of these arguments in turn.

As a threshold matter, we agree that the claims against Defendants Wetzel and Yale must be dismissed. The Complaint identifies these Defendants in its prefatory paragraphs but fails to make any other allegation regarding either of

10

these individuals. As the Corrections Defendants correctly observe, liability under Section 1983 cannot be premised on a *respondeat superior* theory; rather, liability can result only from a defendant's personal involvement. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Importantly, "a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000).

The Plaintiff responds that pursuant to *Rode*, actual knowledge or acquiescence in the unconstitutional conduct is sufficient to find personal involvement for purposes of Section 1983. We agree with this proposition. However, there is a complete dearth of factual allegations regarding either of these Defendants in the Complaint, and thus any inference that these Defendants either knew or should have known of the allegedly unconstitutional conduct would be entirely unreasonable and beyond the scope of the deferential Rule 12(b)(6) standard. Because the Complaint contains no facts which tend to establish that Defendants Wetzel and Yale either participated in, approved, or otherwise contributed to the Plaintiff's injury, the claims against them must be dismissed. We will thus grant the Defendants' motion to the extent it seeks dismissal of Defendants Wetzel and Yale.

This leaves only the Plaintiff's due process claims against Defendant Weiss, who is sued both in his individual capacity and his official capacity as a supervisory official within the Department of Corrections. The Plaintiff alleges that Defendant Weiss "conducted the recalculation" personally and has thus at least alleged some personal involvement on his part. The question thus becomes whether this recalculation, which apparently resulted in denial of prerelease status and ultimately caused the Plaintiff to be under the supervision of the Parole Board beyond the date of his maximum sentence, violated the Plaintiff's due process rights.

First, we turn to the allegation that Defendant Weiss's recalculation resulted in a denial of prerelease status and thus a violation of due process. It is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1,7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Courts in this Circuit have applied this principle to hold that denial of or revocation of prerelease status does not implicate or violate an inmate's due process rights. *See, e.g.*, *Gonzalez v. Elliot*, 2012 U.S. Dist. LEXIS 69132, *27 (M.D. Pa. Apr. 17, 2012) ("Convicted state inmates can reasonably expect to be housed in state correctional institutions as

part of their criminal sentences, and thus removal from a pre-release list and placement in a correctional institution does not violate an inmate's [right to] due process."). While the Plaintiff argues that the denial or revocation of prerelease status is more akin to revocation of parole or supervised release, both of which have long been considered protected interests, there is no case law to support that contention. Indeed, the decisional law as just cited weighs heavily against that proposition. Thus, we cannot find that the removal from prerelease status constitutes a due process violation and will thus grant the motion to dismiss to that extent.

Lastly, we consider the Plaintiff's claim regarding the duration of his sentence and supervision. According to the Complaint, Defendant Weiss miscalculated the Plaintiff's sentence, in contravention of the Commonwealth Court's order, which resulted in the Plaintiff being "wrongly incarcerated for a minimum of approximately seventeen months" and under supervision for seven months beyond his maximum supervision dated. (Doc. 1, ¶¶ 24-27). Assuming these facts to be true as we must at this juncture, it appears to be plausible that Defendant Weiss played a pivotal role in causing the Plaintiff to be incarcerated and ultimately supervised beyond his maximum sentence date. (*Id.*). We thus cannot agree with Defendant Weiss's position that the Complaint does not

sufficiently allege a deprivation of liberty or personal involvement, and we cannot grant his motion on that basis.

In arguing their positions, however, both parties have neglected a critical doctrine announced by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), which provides that a Section 1983 action challenging any aspect of a conviction or sentence cannot proceed unless the plaintiff has previously sought and achieved invalidation of the conviction or sentence. In *Heck*, the Court held that in order to recover damages for allegedly unconstitutional confinement, a Section 1983 plaintiff must plead that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. The Court has broadly interpreted *Heck*, holding that "a state prisoner's Section 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of the confinement *or its duration*." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis added). The Third Circuit has further held that the *Heck* rule bars Section 1983 actions even where

an inmate has been released from custody rendering habeas relief unavailable. *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).

In the matter *sub judice*, the Plaintiff seeks to hold the Defendant liable for the allegedly improper duration of his sentence, a situation contemplated by and expressly included in *Heck*'s breadth by *Wilkinson*. Both of these cases have been applied in this Circuit to dismiss similar Section 1983 claims. *See, e.g.*, *Royal v. Durison*, 254 Fed. Appx. 163, 165 (3d Cir. 2007) (favorable termination rule barred state inmate's challenge to Department of Corrections' sentencing miscalculation which led to his being incarcerated more than six months beyond statutory maximum); *Early v. Ludwig*, 2009 U.S. Dist. LEXIS 108350, *8-13 (W.D. Pa. Feb. 24, 2009) (state inmate's claims against Board of Probation and Parole and Department of Corrections officials arising from alleged sentence miscalculation barred by *Heck*), *adopted in Early v. Ludwig*, 2009 U.S. Dist. LEXIS 32551 (W.D. Pa. Mar. 23, 2009); *Jones v. Yale*, 2008 U.S. Dist. LEXIS 48650, *2 (E.D. Pa. June 25, 2008) (sentencing miscalculation claim barred by *Heck* for failure to challenge validity regardless of fact that inmate was no longer incarcerated). As in each of those cases, if we were to ultimately hold that the Defendants did incarcerate the Plaintiff beyond his maximum sentence, we would necessarily be holding that his confinement or its duration were invalid.

Accordingly, because *Heck* bars this Court from hearing such a claim, we must grant the Defendant's motion and dismiss the Plaintiff's due process claim.

V.     **CONCLUSION**

For all of the reasons articulated herein, we will grant both motions to dismiss in their respective entireties and dismiss the Plaintiff's Complaint. An appropriate Order shall issue.